**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| LONNIE S. C. PROTHRO, IV, | § | |
|      Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-09-3716 |
| | § | |
| COCA-COLA ENTERPRISES INC., | § | |
|      Defendant. | § | |

**MEMORANDUM AND ORDER**

Plaintiff Lonnie Prothro filed this employment discrimination lawsuit alleging that Defendant Coca-Cola Enterprises Inc. ("Coca-Cola") discrimination against him on the basis of his race and disability. The case is now before the Court on Defendant's Motion to Compel Arbitration and to Dismiss the Claims of Plaintiff or, in the Alternative, Stay Proceedings ("Motion") [Doc. # 12]. Plaintiff filed a Response [Doc. # 24], Defendant filed a Reply [Doc. # 29], and Plaintiff filed three separate Replies [Docs. # 39, # 40, and # 41]. Based on its review of the full record in this case and the application of governing legal authorities, the Court **grants** Defendant's Motion to Compel Arbitration.

**I.     FACTUAL AND PROCEDURAL OVERVIEW**

Plaintiff was employed by Coca-Cola from February 1989 to June 2008. Plaintiff alleges that Defendant discriminated against him on the basis of his race and

disability when it denied him the opportunity to use sick leave, personal leave, and vacation time. Plaintiff alleges that he was forced to retire as a result of Defendant's discrimination.

Effective March 14, 2005, Coca-Cola implemented a conflict resolution program referred to as the "Solutions Program" that requires binding arbitration of all legal disputes between Coca-Cola and its employees. *See* Solutions Program Brochure ("Brochure"), Exh. B to Motion; Solutions Program Summary Description ("Summary"), Exh. C to Motion; Solutions Program Plan Document ("Plan Document"), Exh. D to Motion; Solutions Program Frequently Asked Questions ("FAQs"), Exh. E to Motion. The Solutions Program specifically applies to conflicts involving alleged discrimination. *See, e.g.*, Brochure, p. 6. Coca-Cola would pay all expenses of the arbitration and would reimburse the employee for up to $1,000.00 per year, less a $50.00 deductible and a 10% co-pay, for the fees of an attorney hired by the employee in connection with the Solutions Program. *See* FAQs, p. 3; Brochure, p. 7.

Prior to the effective date of the Solutions Program, Coca-Cola notified its employees that the program would be implemented. *See* February 1, 2005 Letter, Exh. A to Motion. Coca-Cola also provided to its employees a Solutions Program brochure and summary description. *See id.* The letter notified Coca-Cola employees

that the Solutions Program had been adopted as the "exclusive means of resolving workplace conflict" and that employees would "resolve all legal claims and other workplace conflicts through Solutions rather than through court." *See id.*

On March 7, 2005, Coca-Cola conducted an orientation program during which the employees in attendance were provided the Plan Document and the FAQs. A PowerPoint presentation was made, and the employees in attendance were provided with a paper copy of the PowerPoint. *See* Solutions Program PowerPoint ("PowerPoint"), Exh. F to Motion. The employees in attendance signed a sign-in sheet (Exh. G to Motion) and initialed that they received the Plan Document, the PowerPoint, and the FAQs.

Plaintiff continued to work for Coca-Cola for more than three years after the Solutions Program took effect.

Defendant seeks to compel arbitration of this dispute in accordance with the Solutions Program. Defendant also seeks to dismiss or stay this lawsuit pending binding arbitration. The Motion has been fully briefed and is ripe for decision.

## II.     ANALYSIS

### A.     Legal Standards for Arbitration

"Arbitration is 'a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *PaineWebber Inc. v.*

*The Chase Manhattan Private Bank (Switzerland)*, 260 F.3d 453, 462 (5th Cir. 2001) (quoting *United Steelworkers of Amer. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)).  Therefore, the Court must first determine whether there is a valid agreement between the parties to arbitrate their dispute.  *See Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004).  "Although there is a strong federal policy favoring arbitration, this federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties."  *Will-Drill Resources, Inc. v. Samson Resources Co.*, 352 F.3d 211, 214 (5th Cir. 2003) (internal quotations and citations omitted).  In deciding whether the parties entered into a valid agreement to arbitrate, the Court applies general contract principles.  *Id.*

### B.     Existence of an Arbitration Agreement

The Solutions Program is embodied in the Plan Document (Exh. D to Motion), and described in the Brochure (Exh. B to Motion), the Summary (Exh. C to Motion), and the FAQs (Exh. E to Motion).  The Brochure and the Summary were provided to Coca-Cola employees when the February 1, 2005 Letter was sent.  The Plan Document and the FAQs were provided to employees during the March 7, 2005 orientation meeting.

The Plan Document provides clearly and prominently in bold print on the first page that "no Conflict can be taken to court."  *See* Plan Document, p. 1.  This

information is emphasized in the Brochure, which provides that the arbitrator's decision is final and legally binding and that disputes "will be resolved through arbitration rather than the court." *See* Brochure, p. 5. On page 7 of the Brochure, it is again explained that "workplace conflicts will be addressed and resolved only through Solutions" and the employee is notified that if he "files a lawsuit against the Company, the Company will ask the court to dismiss the lawsuit and refer it back to Solutions." *Id.* at 7. The Summary also makes it clear that workplace disputes can be resolved only through the Solutions Program and that the arbitrator's decision is final and binding. *See* Summary, pp. 5, 2-3. In the FAQs, a question about taking disputes to court is answered by stating again that the arbitrator's decisions are binding. *See* FAQs, p. 4.

The Plan Document provides that "continued employment after the Effective Date of this Program constitutes consent by both the Employee and the Company to be bound by this Program, both during the employment and after termination of employment." *See* Plan Document, p. 11. The FAQs also notify the employee that by "continuing employment with the Company, each employee agrees to resolve Legal Disputes using Solutions and not through the court system." *See* FAQs, p. 4. Having been notified that his continued employment would constitute acceptance of the Solutions Program including the arbitration provision, Plaintiff continued to work

for Coca-Cola for over three years. Once notified that continued employment would manifest consent, continued employment manifests "assent in the requested manner." *See May v. Higbee Co.*, 372 F.3d 757, 764 (5th Cir. 2004).

The Solutions Program arbitration agreement applies to legal disputes between Coca-Cola and its employees. The list of conflicts subject to the arbitration agreement specifically includes conflicts involving allegations of discrimination on the basis of race and/or disability. *See* Plan Document, p. 3; *see also* Brochure, p. 6.

Plaintiff does not challenge the existence of the Solutions Program or that it covers disputes involving allegations of employment discrimination. Instead, Plaintiff denies receiving the February 1, 2005 Letter and denies attending the Solutions Program orientation session. Plaintiff denies signing the sign-in sheet for the orientation session, asserting that the signature is not his. Defendant has presented the affidavit of Sonny Wilkins, Plaintiff's direct supervisor, who states that Plaintiff was at the orientation session, that Plaintiff signed the sign-in sheet, and that he believes the signature on the sign-in sheet is Plaintiff's. *See* Declaration of Sonny Wilkins, Attached to Reply, ¶¶ 5-6.

Defendant also presented the expert opinion of Jane Eakes, a Certified Document Examiner and Court Qualified Handwriting Examiner. Eakes compared the signature on the sign-in sheet to known examples of Plaintiff's signatures. Based

on this comparison, Eakes determined that the signature on the sign-in sheet was made by Plaintiff (the person who provided the known signature examples). *See* Declaration of Jane Eakes, Attached to Reply, ¶ 5.

### III. CONCLUSION AND ORDER

Defendant has presented clear and unmistakable evidence that Plaintiff attended the orientation session and signed the sign-in sheet, that Plaintiff was notified in writing that continued employment with Coca-Cola would constitute an agreement to be bound by the Solutions Program and its arbitration provision, and that Plaintiff continued working for Coca-Cola after receiving the written notice. It is uncontested that the Solutions Program contains a binding arbitration agreement that covers this dispute between Plaintiff and Defendant. As a result, the Court finds that there exists an agreement between the parties to arbitrate the issues in this litigation, and it is hereby

**ORDERED** that the Motion to Compel Arbitration [Doc. # 12] is **GRANTED** and Plaintiff's discrimination claims shall be submitted to binding arbitration in accordance with the terms of the Solutions Program. It is further

**ORDERED** that this case is **STAYED AND ADMINISTRATIVELY CLOSED** pending the completion of the arbitration proceedings.

SIGNED at Houston, Texas, this **22nd** day of **January, 2010.**

_____
Nancy F. Atlas
United States District Judge